IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE STEFANIE CHIGUER | Case No. 24-mc-28-APM |

**THE PRESS COALITION'S RESPONSE IN OPPOSITION TO THE
GOVERNMENT'S EMERGENCY MOTION FOR PROTECTIVE ORDER**

The Government asks this Court to enter an unprecedented prior restraint on the 16 news organizations that comprise the Press Coalition, as well as their counsel. Prior restraints like these are "the most serious and the least tolerable infringement on First Amendment rights," *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and every prior restraint bears "a heavy presumption against its constitutional validity," *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). The U.S. Supreme Court, in fact, has <u>never</u> held a prior restraint constitutional, *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996), and it has left the door open to prior restraints "only in exceptional cases," *Near v. Minnesota*, 283 U.S. 697, 716 (1931). This is not such a case. Rather, it is merely a case of the Government intentionally releasing truthful information on a matter of public concern and then rethinking and regretting its choice.

The Government now asks the Court to commit two fundamental constitutional errors for the price of one. It seeks a prior restraint against the press without anything close to the historic and extraordinary circumstances that would even conceivably justify such an order. Moreover, in doing so, it seeks to prevent the publication of truthful information on a matter of public concern that the Government itself has disclosed. The Court should follow decades of clear and controlling Supreme Court case law addressing both of those First Amendment issues and promptly deny the Government's Emergency Motion.

**BACKGROUND**

In the underlying case, *United States v. Chiguer*, No. 22-cr-25, defendant Stefanie Chiguer pleaded guilty in April 2022 to participating in the Capitol riot, specifically by parading, demonstrating, or picketing in the Capitol building on January 6, 2021. *See* Plea Agreement (Dkt. 36) at 1. The public docket in that case, however, does not reflect the filing of any subsequent sentencing memoranda, the holding of any sentencing proceedings, or the issuance of any judgment. If those records were filed and those proceedings took place, therefore, that was done entirely under seal and out of public view. Yet the public docket also does not reflect any sealing motion by either party or any sealing order entered by the Court. The docket, as far as the public can see, simply went silent.

The Press Coalition, which has been seeking maximum transparency in the Capitol riot cases for the past three years, recently moved to unseal these records and proceedings pursuant to the First Amendment and common law rights of access. That is nothing new. The Government, which opposed the access motion, then filed a sealed response in opposition and a sealed motion for leave to file that sealed response. Unfortunately, this is another case where, rather than requesting to seal only those narrow and targeted redactions that are actually necessary to protect its asserted interests, the Government proceeded with blanket sealing of entire documents.

What came next was a circumstance entirely of the Government's own making, which raises First Amendment issues. The Government, without prompting, sent an unredacted "courtesy copy" of its motion and response brief to Press Coalition counsel. That placed Press Coalition counsel in somewhat of a bind: the D.C. Rules of Professional Conduct require attorneys to keep their clients "reasonably informed" on "all aspects of the subject matter of the representation" and authorize attorneys to withhold information from their clients only in "rare

2

circumstances." *See* D.C. Rules of Professional Conduct 1.4(a) & cmts. 2 & 5. And, as discussed *infra*, the First Amendment protects the press's publication of information that the Government itself has released, even inadvertently.

Rather than immediately sending the filings to the Press Coalition, which the Rules of Professional Conduct and the First Amendment both would permit, out of utmost respect for this Court, undersigned counsel hit the pause button. Press Coalition counsel promptly notified the Government of their intent to share the motion and response brief with the Press Coalition while providing the Government two days to "bring this issue before the Court." *See* Emergency Mot. Ex. 1 at 1. The Government has now done so, and it has rather baselessly insulted Press Coalition counsel in the process, characterizing undersigned counsel's actions as "procedurally, substantively, and professionally inappropriate." *See* Emergency Mot. at 2.

Asserting the press's and the public's constitutional and common law rights to open courtrooms and dockets, and insisting on maximum transparency in these extraordinary proceedings, is hardly "professionally inappropriate." What is inappropriate under the law is the Government's request for a prior restraint, and for the reasons below the Court should reject it.

## ARGUMENT

The Government cannot justify its extraordinary request for a prior restraint against the press, and it certainly cannot do so where, as here, the speech that the Government seeks to restrain is truthful information on a matter of public concern that the Government itself released.

**First**, the Government fails to justify its request for a prior restraint. More than two centuries of unbroken precedent establish a "virtually insurmountable barrier" against the issuance of such a prior restraint on a news organization. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 259 (1974) (White, J., concurring). The Government's asserted interests here are

nothing like the types of "exceptional cases" that the Supreme Court has indicated might possibly justify such a restraint. *See, e.g.*, *Near v. Minnesota*, 283 U.S. 697, 716 (1931) ("No one would question but that a government might prevent actual obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of troops."); *New York Times Co. v. United States*, 403 U.S. 713, 726-27 (1971) (Brennan, J., concurring) ("[O]nly governmental allegation *and proof* that publication must inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a transport already at sea can support even the issuance of an interim restraining order.") (emphasis added).  Indeed, the Government does not cite a single authority – whether controlling or persuasive – supporting the type of relief it seeks in this case.  It does not because it cannot.

**Second**, the Government fails to justify restricting the press from publishing truthful information on a matter of public concern that the Government itself disclosed.  Under well-established Supreme Court precedent, if a news organization "lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Fla. Star v. B.J.F.*, 491 U.S. 524, 533 (1989) (quoting *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979)).  This principle has its strongest application when the information to be published is public by its nature, such as court records.  *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 496 (1975) ("[T]he First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records."). Furthermore, that protection applies even where the Government has disclosed the information inadvertently.  *See, e.g.*, *Fla. Star*, 491 U.S. at 526, 533; *Cox*, 420 U.S. at 472-73.

Here, the Government admits that it disclosed its motion and response brief intentionally. *See* Emergency Mot. at 2. It recognizes "[i]n hindsight" that "it could have provided Press Coalition counsel with redacted versions of its motion to seal and response." *Id.* at 2 n.2. It fails to recognize, however, that it also could have asked Press Coalition counsel, <u>before</u> sharing the documents, whether the Press Coalition would agree to receive unredacted filings on condition of tentatively maintaining their confidentiality. What the Government cannot do, however, is unilaterally and intentionally provide unredacted court records to the press and, after the fact, insist that the press keep them secret. Nor does the First Amendment permit the Government to obtain a court order compelling such silence on pain of contempt.

Because this Emergency Motion flies in the face of decades of Supreme Court case law and First Amendment doctrine, the Court should deny the Government's request for a prior restraint on truthful information on a matter of public concern that the Government disclosed.

## CONCLUSION

For the foregoing reasons, the Press Coalition respectfully requests that the Court deny the Government's Emergency Motion and place on the public docket unsealed copies of the Government's motion for leave to file a sealed response (Dkt. 3) and response brief (Dkt. 3-1).

Dated: March 8, 2024    Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Lauren P. Russell (#1697195)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
russelll@ballarspahr.com

*Counsel for the Press Coalition*